# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: May 22, 2018

* * * * * * * * * * * * *
STEVEN FORREST and NICOLE FORREST, on behalf of E.M.F., * UNPUBLISHED

Petitioners, * No. 10-32V

v. * Special Master Gowen

SECRETARY OF HEALTH AND HUMAN SERVICES, * Attorneys' Fees and Costs; Special Master's Discretion; Legal Database Charges; Expert Rates; Expert Travel; Expert Retainer.

Respondent. *
* * * * * * * * * * * * *

Jessica W. Hayes, Murray Law Firm, New Orleans, LA, for petitioners.
Heather L. Pearlman & Ryan D. Pyles, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS**[1]

On April 12, 2018, Steven Forrest and Nicole Forrest ("petitioners") filed a motion for attorneys' fees and costs. Petitioners' Motion (ECF No. 123). For the reasons discussed below, the undersigned **GRANTS** petitioners' motion for attorneys' fees and costs and awards a total of $132,210.89 in attorneys' fees and costs.

## I. Procedural History

On January 14, 2010, Steven Forrest and Nicole Forrest, as the representatives of the estate of their deceased minor child, E.M.F., filed a claim in the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Vaccine Program").[2] Petitioners alleged that E.M.F. died on January 14, 2008, as a result of receiving the Diphtheria-Tetanus-acellular-

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website can be accessed at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." Id. **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Pertussis ("DTaP"), inactivated polio ("IPV"), haemophilus B influenza ("Hib"), Pneumococcal Conjugate ("PCV"), and Rotavirus vaccinations on January 10, 2008. Since the initiation of their claim, petitioners were represented by the current counsel of record, Jessica W. Hayes. They first submitted three expert reports from Dr. John Shane. Eventually, they determined not to move forward with Dr. Shane as an expert. Instead, petitioners submitted the expert opinion of Dr. Laurel Waters. Both petitioners, Dr. Waters, and respondent's expert Dr. Vargas testified at a one-day entitlement hearing in New Orleans, Louisiana, on December 7, 2015. Ultimately, on August 10, 2017, I issued a decision concluding that petitioners had not met their burden of establishing causation by a preponderance of the evidence. Decision (ECF No. 118).[3] On September 14, 2017, the Clerk of the Court entered judgment and the case was dismissed. Judgment (ECF No. 120).

On April 12, 2018, petitioners filed their motion for $87,545.00 in attorneys' fees and $46,514.77 in attorneys' costs. Petitioners' Motion (ECF No. 123). On April 17, 2018, respondent filed a general response leaving the determination regarding attorneys' fees and costs to the undersigned's discretion. Respondent's Response (ECF No. 125). On April 18, 2018, an initial review determined that petitioners' motion lacked any supporting documentation for the attorneys' costs requested in the motion. I ordered petitioners to file a reply containing all such documentation. Scheduling Order (ECF No. 126). On April 20, 2018, petitioners filed a reply with documentation for their costs. The reply provided that petitioners' counsel "ha[d] spoken to Dr. Waters and she has supplemental information that can be provided but needs an additional 30 days due to her current schedule." Petitioners' Reply (ECF No. 127). Petitioner was granted an additional month, until May 17, 2018, to file any further reply. Non-PDF Order granting Petitioners' Motion for Extension of Time (ECF No. 128).

On May 17, 2018, petitioners filed a supplemental reply. While the motion initially requested reimbursement for Dr. Waters totaling $29,290.00, the reply and the supplemental reply requests an increased total of $44,715.00. See Petitioners' Supplemental Reply (ECF No. 129), Exhibit 1 at 2.[4]

Thus, petitioners' final request is for $87.545.00 in attorneys' fees and $61,332.77 in attorneys' costs, for a total request of $148,877.77. The matter is now ripe for adjudication.

## II. Analysis

Under the Vaccine Act, the special master may award reasonable attorneys' fees and costs for a petition that does not result in an award of compensation, but was filed in good faith

[3] This entitlement decision provides more detail about the underlying procedural history.

[4] While unexplained, this discrepancy may be due to oversights by the Murray Law Firm and/ or Dr. Waters. The first difference is that the firm's itemized list of costs includes a retainer fee of $2,500 to Dr. Waters dated 07/25/2014. Petitioners' Motion, Exhibit 2 at 1. In contrast, Dr. Waters does not record receiving a specific check for the retainer. However, she records "invoice amount $15,425 paid by Murray Law Firm check #14471 on 08/29/2014." Petitioners' Supplemental Reply, Exhibit 1 at 3.

Additionally, petitioners' motion initially did not request reimbursement for Dr. Waters's travel to the entitlement hearing. Those costs were only addressed in petitioners' reply and their supplemental reply.

and supported by a reasonable basis. § 300aa-15(e)(1). I find no cause to doubt the good faith or reasonable basis of bringing this claim, which, even though not successful, was supported by credible fact witnesses and competent expert opinion. Additionally, respondent has not objected to the good faith or reasonable basis of the claim. Accordingly, I find that petitioners are entitled to an award of reasonable attorneys' fees and costs.

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1993). Adequate proof of the claimed fees and costs should be presented when the motion is filed. Id. at 484 n. 1. The special master has the discretion to reduce awards sua sponte, independent of enumerated objections from the respondent. Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313 (Fed. Cl. 2008), aff'g No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

**a. Attorneys' Fees**

Petitioners request that their counsel, Ms. Hayes, receive a rate of $200 per hour for work performed from 2009 - 2011 and $275 per hour for work performed from 2012 – 2018. These requested rates are well within the ranges I found reasonable for an attorney of her experience in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Moreover, other special masters and I have previously found that these rates are reasonable and should be awarded to Ms. Hayes. See, e.g., Truax v. Sec'y of Health & Human Servs., No. 15-1099V, 2018 WL 1310480 (Fed. Cl. Spec. Mstr. Feb. 13, 2018); Crosby v. Sec'y of Health & Human Servs., No. 15-556V, 2017 WL 7101151 (Fed. Cl. Spec. Mstr. Aug. 29, 2017); Estate of Joiner v. Sec'y of Health & Human Servs., No. 14-211V, 2017 WL 3597932 (Fed. Cl. Spec. Mstr. June 1, 2016). I find that these hourly rates are also reasonable and should be awarded in the present case.

I have also reviewed the billing records. They reflect the nature of each task performed and the amount of time involved on the same. I generally find them to be reasonable. In this instance, I will not adjust the hours expended.

**b. Attorneys' Costs**

Like attorneys' fees, costs must also be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29 (1992). In this instance, I find that it is necessary to adjust certain requested costs to make them reasonable.

**i. Double-Billing**

Petitioners also request reimbursement for the Murray Law Firm' payments of certain travel expenses incurred by an individual named Geoffrey Dumont. Petitioners' Motion, Exhibit 2 at 2. Petitioners' reply provides that the Murray Law Firm employed Mr. Dumont as a court runner. The firm reimbursed Mr. Dumont for mileage associated with travel in support of this claim. However, mileage on one trip was double-billed. Petitioners and their counsel

request that the fee request is reduced to correct for this double-billing. Petitioners' Reply at 2. **Per petitioners' request, the fee request is reduced by $40.79.**

**ii. Legal Database Charges**

Petitioners also request that the Murray Law Firm should be reimbursed for $3,367.87 in legal database "research" charges. Petitioners' Motion, Exhibit 2 at 2. The firm has only provided a list of these charges on particular dates. For example, the first charge is dated September 30, 2010, the payee is Westlaw, the detail is "research," and the debit amount is $420.33. Id. Petitioners have not submitted any specific invoices or other documentation that the charges were paid. In my experience, a firm such as the Murray Law Firm typically purchases access to a legal research database such as Westlaw. The firm pays a negotiated fee on a monthly or yearly basis. The database provides the firm with a list of charges for research performed in a particular case. The firm can provide this list to its client, as a representation of the value of that research. However, this list generally bears no relationship to the research costs actually incurred in the case. The Vaccine Program has traditionally treated subscriptions to legal research databases as office overhead costs, which are not compensable. I see no reason to deviate from this policy in this case. **This results in a deduction of $3,367.87.**

**iii. Dr. Laurel Waters**

Petitioners request $44,715.00 for costs associated with their expert Dr. Laurel Waters. Petitioners' Reply, Exhibit 1 at 2. Several adjustments need to be made to this figure.

**1. Hourly Rate for Expert Consultation**

First, with regard to hourly rates, Dr. Waters charged $500 per hour for "records review, slide review, deposition review, discussions with counsel, discussions with parents, and composing reports." Petitioners' Reply, Exhibit 2 at 1. She charged $750 per hour for participation in any deposition or trial. Id.

Dr. Waters is a fairly new participant in the Vaccine Program. Last year, Chief Special Master Dorsey had the first opportunity to evaluate Dr. Waters' qualifications and quality of expert opinion. She found that it was reasonable to award Dr. Waters $400 per hour for rendering expert opinions in two different cases. Pelton v. Sec'y of Health & Human Servs., No. 14-674V, 2017 WL 3378773 (Fed. Cl. Spec. Mstr. July 12, 2017); Mulroy v. Sec'y of Health & Human Servs., No. 15-1324V, 2017 WL 4585570 (Fed. Cl. Spec. Mstr. Sept. 19, 2017).

I find Chief Special Master Dorsey's reasoning in Pelton and Mulroy to be persuasive and also applicable to Dr. Waters in the present case. All three developed over the same period of time. In both Pelton and the present case, Dr. Waters's opinion was on causation between childhood vaccinations and sudden infant death syndrome ("SIDS"). In both cases, Dr. Waters's opinion was somewhat lacking and did not support a finding that the petitioner was entitled to compensation.

One distinction is that unlike Pelton and Mulroy, the present case proceeded to an entitlement hearing, for which Dr. Waters requests a higher rate of $750 per hour. Dr. Waters does not offer any justification for this significantly higher rate I am aware that in other types of civil cases, experts sometimes request higher rates for appearing in court or at depositions than for preparing opinions. But in the Vaccine Program, an expert is typically awarded one hourly rate for all work done in a case. Therefore, I will award Dr. Waters the same rate of $400 per hour for her participation in the hearing. **This results in a deduction of $6,700.**

### 2. Hourly Rate for Travel

It is also necessary to reduce Dr. Waters' requested travel rate of $300 per hour. Within the Vaccine Program, hours spent traveling are ordinarily compensated at one-half the individual's working hourly rate (unless the individual documents that he or she worked on the case while traveling). See, e.g., Scott v. Sec'y of Health & Human Servs., No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014). While Scott applies this principle to formulate a reduced hourly rate for travel by an attorney, the same principle would extend to travel by an expert. Accordingly, Dr. Waters will be awarded one-half of her regular rate, or $200, for the time spent traveling. **This results in a deduction of $2,100.**

### 3. Support Staff

Dr. Waters's invoices also bill for a "legal nurse." This individual's name and qualifications are unknown. They request $100 per hour for 24.5 hours of work. The billing entries are fairly vague but suggest that the individual performed research on medical topics for Dr. Waters. Petitioners' Supplemental Reply, Exhibit 1 at 1-5. Chief Special Master Dorsey's previous decisions involving Dr. Waters do not involve costs for a legal nurse. And in the present case, Dr. Waters has provided little to no information about the necessity for this person. I am willing to accept that the nurse performed research at a rate that is reasonably low and certainly lower than what was billed by Dr. Waters. Although I would caution Dr. Waters to provide more detail in the future, the amount of work performed by the nurse does not seem excessive. Thus, it will be awarded.

Dr. Waters also bills for an unnamed "technical editor" who requests $75 per hour for 23 hours of work, described solely as "edit report by sections and overall." Petitioners' Supplemental Reply, Exhibit 1 at 1, 4. This work was all performed in September 2014, shortly before Dr. Waters's first report was filed with the Court. See Petitioners' Exhibits 25-28, filed September 29, 2014 (ECF No. 80). This suggests that the technical editor helped to finalize Dr. Waters's first expert report. However, Dr. Waters has not provided any such explanation. The report was 19 pages long and contained references to medical literature on SIDS. However, 23 hours of time for what may be simply organizational and technical edits seems excessive. Moreover, this is an unusual request which I have not previously seen from other experts. Based on my experience and discretion, while I will compensate for the nurse, I will not compensate for the technical editor. **This results in a deduction of $1,725.00.**

### 4. Accommodations for the Hearing

Dr. Waters billed $932.88 for staying four nights in a hotel, as part of her participation in the entitlement hearing in New Orleans, Louisiana in December 2015. This also merits adjustment.

The parties and I had agreed that the hearing should take place in New Orleans, for the petitioners' convenience. Two days – Monday, December 7 and Tuesday, December 8, 2015 – were reserved. The hearing actually took only one day. It ended on Monday, December 7, 2015 in the early evening. See Transcript (ECF No. 109) at 244.

It is customary for attorneys and witnesses to travel to a hearing's location one day before a hearing begins and to depart one day after. Thus, it was certainly reasonable for Dr. Waters (who is based outside of San Francisco, California, but traveled to testify in person) to stay in a hotel in New Orleans on Sunday, December 6, 2015 and on Monday, December 7, 2015. From the standpoint most favorable to Dr. Waters – i.e., that she committed to two full days of hearing, booked her travel and accommodations in advance, and could not change them – it might be considered reasonable that Dr. Waters also stayed at the hotel on Tuesday, December 8, 2015.

However, the receipts reflect that Dr. Waters always planned and indeed did stay in New Orleans a fourth night, Wednesday, December 9, 2015. Petitioners' Reply, Exhibit 2 at 11. Her flight out of New Orleans was on Thursday, December 10, 2015 at 5:55 p.m. Petitioners' Reply, Exhibit 2 at 9. Even when viewed in the light most favorable to Dr. Waters, this is unreasonable. There was no reason to remain in New Orleans for another day and night after the proceedings, and bill the Vaccine Program for a fourth night in a hotel. (This is supported by the fact that after the hearing concluded and Dr. Waters remained in New Orleans, she did not bill for any work on the case). Thus, Dr. Waters should not be reimbursed for 25% of the hotel bill. **This results in a deduction of $233.22.**

### 5. Retainer

Finally, Dr. Waters's fee schedule provides for a $2,500 "retainer (applied to final 3-5 hr)." Petitioners' Reply, Exhibit 2 at 1. In this case, Dr. Waters submitted itemized invoices for $15,425; $11,650; and $15,140. She also requests the $2,500 retainer. Petitioners' Supplemental Reply, Exhibit 1 at 3-5. It does not appear that she credited the retainer towards to any of the itemized invoices. I find that it is appropriate to do so. **This results in a deduction of $2,500.**

## III. Conclusion

In accordance with the foregoing, petitioners' motion for attorneys' fees and costs is **GRANTED**. I find that they are entitled to the following reasonable attorneys' fees and costs:

**Attorneys' Fees Awarded (without adjustment): $87,545.00**

| | |
|---|---|
| Attorneys' Costs Requested: | $61,332.77 |
| Deduction for Double Billing | -$ 40.79 |
| Deduction for Legal Research | -$ 3,367.87 |
| Deductions for Dr. Waters | -$13,258.22 |
| **Attorneys' Costs Awarded:** | **$44,665.89** |
| | |
| **Total Attorneys' Fees and Costs Awarded:** | **$132,210.89** |

Accordingly, I award the following:

1) **A lump sum in the amount of $132,210.89, representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable jointly to petitioners and their attorney, Jessica Hayes of Murray Law Firm.**[5]

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** herewith.[6]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[5] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[6] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties jointly or separately filing notice renouncing their right to seek review.